Danny J. HARRISON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–5700.

Court of Appeals of Alaska.

Aug. 23, 1996.

Patrick W. Conheady, Olmstead and Conheady, Juneau, for Appellant.

James L. Hanley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

BRYNER, Chief Judge.

Danny J. Harrison was convicted by a jury of two counts of perjury in violation of AS 11.56.200(a). Harrison appeals, contending that Superior Court Judge Larry C. Zervos erred in denying Harrison's motion for a judgment of acquittal. We affirm.

After being convicted of misconduct involving weapons and theft by receiving, Harrison filed an application for postconviction relief, challenging his convictions. The state moved to dismiss Harrison's application. In reply to the state's motion, Harrison filed a factual statement claiming, among other things, that the police officers who arrested him "broke his arm and killed his dog." To this statement, Harrison attached a signed document that he entitled "Affidavit in Support of Reply to Opposition to Motion for Post Conviction Relief." Harrison's affidavit attested to the truth of his factual statement:

I, Danny J. Harrison, being duly sworn upon my oath, depose and state the following:

1. That I am Defendant in the above-captioned cause of action.

2. That the representations and allegations made in the Reply attached hereto and referred to herein by reference are true and correct to the best of my knowledge.

3. That I have thoroughly read Cr.R. 11 and 35(a) and found nothing in either which overrides the jurisdiction of this Court in this matter.

4. That I firmly believe that once presented the facts, and the positive changes effected by the Defendant since the original sentencing, relief will be justified.

FURTHER AFFIANT SAYETH NAUGHT.

DATED this 12th day of November, 1993, at Eagle River, Alaska.

/s/————————————

Danny J. Harrison

Defendant, Pro se

COMES NOW Danny J. Harrison, pursuant to the provisions of A.S. 09.63.020, and Title 28, United States Code, Section 1746, and declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on November 12, 1993.

/s/————————————

Danny J. Harrison

The state eventually discovered that Harrison's factual statements were false: the police neither broke Harrison's arm nor killed his dog. As a result of these false statements, the state charged Harrison with two counts of perjury. At trial, Harrison moved for a judgment of acquittal, arguing that the affidavit upon which his perjury prosecution was based failed to qualify as a "sworn statement," as defined in Alaska's perjury statute.

Judge Zervos denied Harrison's motion. On appeal, Harrison renews this argument.

Alaska Statute 11.56.200(a) states that "[a] person commits the crime of perjury if the person makes a false sworn statement which the person does not believe to be true." Alaska Statute 11.56.240(2) defines two types of "sworn statement":

(A) a statement knowingly given under oath or affirmation attesting to the truth of what is stated, including a notarized statement; or

(B) a statement knowingly given under penalty of perjury under AS 09.63.020.

Harrison contends that his "affidavit" did not qualify as a "sworn statement" under either of these definitions. Although Harrison's affidavit recited that Harrison had been "duly sworn upon [his] oath," the affidavit did not purport to have been signed before a notary or any other official empowered to administer oaths. No official actually placed Harrison under oath, and no official was present or available when Harrison signed the affidavit.

■ For purposes of this decision, we assume that the absence of a notary or any other official empowered to administer oaths bars Harrison's affidavit from being deemed a sworn statement under subparagraph (A) of AS 11.56.240(2): "a statement knowingly given under oath or affirmation."[1] We thus consider only whether the affidavit might qualify as a sworn statement under subparagraph (B) of AS 11.56.240(2): "a statement knowingly given under penalty of perjury under AS 09.63.020."

The definition of "sworn statement" set out in subparagraph (2)(B) incorporates the provisions of AS 09.63.020(a), entitled "[c]ertification of documents." The certification statute states:

A matter required or authorized to be supported, evidenced, established, or prov-

---

1. In *Gargan v. State*, 805 P.2d 998 (Alaska App. 1991), we affirmed a perjury conviction based on an affidavit that was signed before a notary, even though the notary did not actually administer an oath. We found the affidavit to be a sworn statement under subparagraph (2)(A) because it purported on its face to have been given under oath. The complete absence of a notary or other official empowered to administer oaths arguably distinguishes Harrison's case from *Gargan*. Our conclusion that Harrison's affidavit qualifies as a sworn statement under subsection (2)(B) makes it unnecessary to consider the state's argument that the affidavit also qualifies as a sworn statement under subsection (2)(A).

en by the sworn statement, declaration, verification, certificate, oath, or affidavit, in writing of the person making it (other than a deposition, an acknowledgment, an oath of office, or an oath required to be taken before a specified official other than a notary public) may be supported, evidenced, established, or proven by the person certifying in writing "under penalty of perjury" that the matter is true. The certification shall state the date and place of execution, the fact that a notary public or other official empowered to administer oaths is unavailable, and the following:

"I certify under penalty of perjury that the foregoing is true."

In the present case, even though Harrison's affidavit expressly stated that Harrison "declare[d] under penalty of perjury that the foregoing is true and correct"—language tracking the form certification required by this statute—the affidavit failed to include another required statement: "that a notary public or other official empowered to administer oaths is unavailable[.]"

Harrison argues that, due to this omission, his affidavit was not a proper certification under AS 09.63.020, and so did not qualify as a "sworn statement" under the definition set out in AS 11.56.240(2)(B), which requires proof of "a statement ... given under penalty of perjury under AS 09.63.020." Harrison reasons that since his affidavit could not be considered a "sworn statement," it was legally insufficient to support convictions for perjury, which under AS 11.56.200(a), require "false sworn statement[s]."

 Harrison's argument is overly technical and ignores the basic policy underlying Alaska's perjury statute; this policy favors substance over form. As noted in the commentary to the Model Penal Code, upon which Alaska's perjury statute was patterned:

The guiding principle [of the offense of perjury] is that when the community commands or authorizes certain statements to be made with special formality or on notice of special sanctions, the seriousness of the demand for honesty is sufficiently evident to warrant the application of criminal sanctions. Upon this principle, it makes little difference what formula is employed to set this seal of special importance on the declaration.

. . . .

Within the same principle, technical irregularities in the administration of an oath should not be regarded as mitigating the offense.

*Model Penal Code* § 241.1, Commentary at 129–30 (1980).

Mindful of this policy, Alaska's appellate courts have chafed at arguments favoring a narrow interpretation of the term "sworn statement." *See Anchorage Sand and Gravel Co. v. Wooldridge*, 619 P.2d 1014 (Alaska 1980); *Knix v. State*, 922 P.2d 913 (Alaska App. 1996); *Gargan v. State*, 805 P.2d 998 (Alaska App.1991).

In *Gargan*, this court dealt with a perjury conviction involving an affidavit that purported on its face to be sworn before a notary. Evidence at trial established that the notary had not actually placed Gargan under oath. We nevertheless affirmed Gargan's perjury conviction, observing that, for purposes of determining whether a sworn statement had been made, the crucial issue was not whether an oath was actually given, but rather whether the statement amounted to "a verification on its face of the truthfulness of the facts contained therein." *Gargan*, 805 P.2d at 1005.

More recently, we followed the same approach in *Knix v. State*, which involved a notarized statement that did not state on its face that it was sworn before the notary and that in fact was not given under oath. The statement nevertheless expressly declared that it was "made under penalty of perjury." We found that this language "readily qualifie[d] as an affirmation," and, relying on *Gargan*, we concluded that "its presence on the face of the notarized statement renders the statement one that 'purports to be sworn.'" *Knix*, 922 P.2d at 917, (quoting *Gargan*, 805 P.2d at 1005). We thus affirmed the perjury convictions.

*Gargan* and *Knix* dealt with notarized statements and thus addressed the definition of "sworn statement" set out in AS

11.56.240(2)(A).[2] In contrast, Harrison's case involves an unnotarized statement purportedly certified under penalty of perjury; thus we address the definition of "sworn statement" set out in subparagraph (B) of the same statute. Nevertheless, the policies we invoked in deciding *Gargan* and *Knix* apply with equal force to Harrison's case.

 When a false statement pertaining to an important matter is sworn, affirmed, or certified, the resulting evil is the likelihood that the statement's formal assertion of truthfulness will be honored and relied upon. This is the evil the perjury statute seeks to prevent. Hence, the pertinent question in Harrison's case is not whether Harrison's omission of a formally required phrase could conceivably cause his affidavit to be rejected on technical grounds in some situations; rather, the question is whether the affidavit, despite this omission, manifests Harrison's intent to formally declare the truthfulness of the affidavit's factual assertions, so that reasonable persons would be expected to honor and act on them.[3]

Despite its failure to expressly state that no notary was available, Harrison's affidavit declared that it was made under penalty of perjury "pursuant to the provisions of AS 09.63.020." By including this language, the affidavit in effect incorporated by reference and implicitly professed compliance with the requirements of the certification statute.

As we have already mentioned, no notary was actually available when Harrison signed his affidavit. Harrison's affidavit clearly

amounted to "a verification on its face of the truthfulness of the facts contained therein." *Gargan*, 805 P.2d at 1005. Given these circumstances, Judge Zervos did not err in finding the evidence legally sufficient to establish that the affidavit was a "sworn statement" within the meaning of AS 11.56.240(2)(B).[4]

Harrison's conviction is AFFIRMED.

---

**2.** Although the affidavit in *Knix* incorporated wording of the certification statute by declaring that it was signed "under penalty of perjury," it had in fact been signed before a notary. Accordingly, we found it to be a notarized statement and concluded that it fell within the definition of a sworn statement set out in subparagraph (A) of AS 11.56.240(2). For this reason, we found it unnecessary to decide whether the affidavit might also have qualified as a sworn statement under the definition set out in subparagraph (B)—"a statement given under penalty of perjury under AS 09.63.020." *Knix*, at 915 n.2.

**3.** *Cf. Martin v. State*, 896 S.W.2d 336, 339 (Tex. App.1995) ("That [an affidavit's] formalities were not met does not negate the existence of the oath; it merely vitiates the use of the instrument as proof that an oath was taken.").

**4.** Harrison acknowledges AS 11.56.200(b)(2), which provides that "[i]n a prosecution [for perjury] under this section, it is not a defense that ... the oath or affirmation was taken or administered in an irregular manner." However, Harrison strenuously argues that this provision applies only to the definition of "sworn statement" set out in AS 11.56.240(2)(A) and that it is inapplicable when a perjury prosecution involves a false statement that qualifies as a sworn statement only under the definition set out in AS 11.56.240(2)(B). Our reliance on *Gargan* and *Knix* makes it unnecessary to determine the scope of AS 11.56.200(b). While our prior decisions make passing reference to this provision, neither purports to give it determinative weight.